**E–SYSTEMS, INC. Group Hospital Medical & Surgical Insurance Plan, et al., Plaintiffs–Appellees,**

v.

**A.W. POGUE, Commissioner of the Texas State Board of Insurance, Defendant–Appellant.**

**LA QUINTA MOTOR INNS, INC., Plaintiff–Appellee,**

v.

**Richard F. REYNOLDS, as a Member of the Texas State Board of Insurance, et al., Defendants–Appellants.**

**Nos. 89–1707, 89–1709.**

United States Court of Appeals, Fifth Circuit.

May 1, 1991.

William E. Storie, Marianne S. Dwight, David D. Menchaca, Asst. Attys. Gen., and Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellants.

John F. Morehead and Paul D. Carmona, Bankston, Wright & Greenhill, Austin, Tex., for amicus.

Carl L. Taylor, Johnson & Gibbs, Washington, D.C., Richard W. Alexander, Johnson & Gibbs, Austin, Tex., for E–Systems, Inc. Group Hosp. Medical and Surgical Ins. Plan, et al.

Rick Harrison and Christina Carlson Dodds, Jones, Day, Reavis & Pogue, Austin, Tex., for La Quinta Motor Inns, Inc.

Before BROWN, POLITZ, and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

In these consolidated cases the district court found that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, preempts the Texas Administrative Services Tax Act (ASTA), Tex.Ins. Code art. 4.11A, as it relates to ERISA plans, enjoined the collection of the tax, and directed a return of the monies wrongfully received therefrom. The State appeals, contending that the federal court lacked jurisdiction by virtue of the Tax Injunction Act, 28 U.S.C. § 1341, and the eleventh amendment and, even assuming the court had jurisdiction, the State contends that the tax at issue is not preempted by ERISA. Finding no merit in appellant's assignments of error, we affirm the judgment of the district court in each of the cases.

## Background

In 1987 Texas enacted ASTA imposing a 2.5% annual tax on each person "receiving any form of administrative or service fee, consideration, payment, premium, fund, reimbursement, or compensation" for providing a service for

> any employer-employee, multiple employer-employee, self-insurance group, member, or other medical, accident, sickness, injury, indemnity, death, or health benefit plan, including but not limited to any medical, surgical, orthopedic, chiropractic, physical therapy, speech pathology, audiology, mental health, dental, hospital, workers' compensation, optometric, or health maintenance organization plan or program, but excluding any portion of such plan for which premiums for insurance are received by the carrier and are otherwise subject to taxation by this state....

Tex.Ins.Code art. 4.11A § 1. These plans are virtually identical to those covered by ERISA, 29 U.S.C. § 1002(1), which prescribes:

> The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 302(c) or the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions).

For purposes of describing the scope of its tax, ASTA defines administrative or service fees to include

the total gross amount of all consideration, fees, payments, reimbursements and all compensation received by the carrier or other person during the taxable year for each and every kind of such service, activity, or function described ... and

the total amount of all claims and benefits paid to or on behalf of employers, multiple employers, employees, unions, beneficiaries, trusts members, spouses, dependents or other persons under a plan. . . .

ASTA, art. 4.11A § 3(2)(A) & (B). Thus, although ASTA purportedly taxes only "administrative" or "service" fees, these by definition include both the administrative fees and the sums received by beneficiaries of the plans.

If the person liable for the tax fails to make payment ASTA imposes liability on the plan. Apparently aware of the shaky ground upon which ASTA was treading, the Texas legislators provided that no tax liability would accrue if collection or retention of the tax was preempted by federal law. Shortly before the first ASTA tax was due the Texas State Board of Insurance issued an emergency rule, now made permanent, that the "person" who first has possession or control over the assets "utilized or required by the payment of the gross amount of administrative or service fee ... shall be primarily liable for the tax." Tex.Admin.Code, title 28, § 7.1704(a). ASTA § 3(4) defines person to include any individual, corporation, plan, or other legal entity.

La Quinta Motor Inns, Inc. and E–Systems, Inc. (hereafter "sponsors") each developed an employee welfare benefits plan regulated by ERISA. They undertook the administrative and management functions of their plans, as well as the responsibility for appointment of plan administrators and amendment and termination of the plans, thus assuming a fiduciary relationship with their respective plans. Both plans are self-insured and self-administered, receiving contributions from the sponsors and, to a limited extent, from the employee-participants. The State demanded payment of the tax, which the sponsors paid under protest. The sponsors filed separate suits, seeking a declaration that ERISA preempts ASTA and asking for appropriate injunctive relief. The district court first held that the suits were not barred by the Tax Injunction Act and then granted summary judgment to the plaintiffs, holding that ASTA is preempted by ERISA, as relates to the two plans at issue, and enjoining further enforcement. The court ordered a return of the sums collected. The State timely appealed; we consolidated the cases for appellate consideration.

*Analysis*

■ The State first contends that the district court lacked jurisdiction to entertain these cases because of the Tax Injunction Act which provides that "district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under the state law where a plain, speedy, and efficient remedy may be had in the courts of such state." 28 U.S.C. § 1341. This would include a declaratory judgment action. *California v. Grace Brethren Church*, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). We find this argument unpersuasive because of the preemption factor. Congress empowered any participant or beneficiary of an ERISA-regulated plan to bring a civil action "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan," 29 U.S.C. § 1132(a)(3), but Congress specifically directed the "exclusive jurisdiction" of such actions in the federal district courts. 29 U.S.C. § 1132(e). State courts lack jurisdiction to decide the dispositive issue in this case—whether ERISA preempts ASTA. It necessarily follows that there can be no effective state remedy under the Tax Injunction Act which, therefore, is inapplicable in an ERISA setting.

■ That leads then to the essential question: Does ERISA preempt in the cases at bar? Under the Supremacy Clause, Congress has the power to preempt state laws. U.S. Constitution, Art. VI. Did Congress exercise that power when it

enacted ERISA? We conclude that it did, for Congress therein declared:

> Except as provided in subsection (b) of this section [the saving clause], the provisions of this title and title IV shall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a) ] and not exempt under section 4(b) [29 U.S.C. § 1003(b) ].

29 U.S.C. § 1144(a). The Supreme Court has given this clause a very broad reading, considering the language "deliberately expansive" in order to ensure that the regulation of employee benefit plans remains within the federal forum. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39, 46 (1987). The preemptive scope of ERISA is "intended to apply in the broadest sense in all actions of State or local governments which have the force of law." *Id.*, 107 S.Ct. at 1552. Most recently the Court observed: "The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corporation v. Holliday*, — U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990).

In *Holliday* the Court noted that the savings clause permitted the state to enforce its insurance regulations, subject to the limitations of the "deemer" clause. The Court declared:

> Under the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts.

*Id.*, 111 S.Ct. at 407.

Reflective of the broad reach of the statute, the Supreme Court has found preemption of state laws which only collaterally or indirectly affected employee benefit plans. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

The State asserts that ASTA does not "relate to" the plans, insisting that it does not affect "relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries and the beneficiaries...." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises*, 793 F.2d 1456, 1467 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). The State contends that ASTA's mere economic impact on a plan is an insufficient reason to invalidate the tax. We do not agree.

We are directed to give the term "relates to" the broadest possible reasonable interpretation. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Even without doing so, it is apparent that ASTA "relates to" the two ERISA plans. Nearly all of the relationships referred to in *Sommers* are affected. The tax is calculated as, *inter alia*, a percentage of all claims paid and disbursements made by the plans each year. The payment is one year removed thus reducing future assets and the capability of the plans to pay benefits. The cost of the plan must therefore increase for the employer and/or employees or the benefits must be adjusted downwards to offset the tax bite. This is the type of impact Congress intended to avoid when it enacted the ERISA legislation.

That Congress intended to preempt state taxation laws can no longer be gainsaid. When Congress amended ERISA to exclude Hawaii's Prepaid Health Care Act from the preemption clause, it added a specific provision that state tax laws were not exempt from preemption. 29 U.S.C. § 1144(b)(5)(B)(i). The conference report on the legislation is illuminating for it stated simply that "the preemption *is continued* with respect to ... any State tax law relating to employee benefit plans...." 1982 U.S.Code Cong. & Admin.News 4603 (emphasis added). The congressional intent appears clear, state tax laws were preempted even before they were specifically enumerated in the amended statute.

The Texas legislation is not saved by the insurance savings clause. Although that

clause lifts the effect of the preemption from any state law which regulates "insurance, banking or securities," 29 U.S.C. § 1144(b)(2)(A), the deemer clause, 29 U.S.C. § 1144(b)(2)(B), declares that no state law regulating insurance shall deem an ERISA plan to be engaged in the business of insurance. Even if ASTA fit within the protective reach of the insurance savings clause, of which we are not persuaded, the deemer clause would prevent its application. Our conclusion is guided by the recent *Holliday* decision in which the Supreme Court instructed:

> We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the savings clause. By forbidding States to deem employee benefit plans 'to be an insurance company or other insurer ... or to be engaged in the business of insurance,' the deemer clause relieves plans from state laws 'purporting to regulate insurance.' As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans.

111 S.Ct. at 409.

Having concluded that ASTA is preempted by ERISA we need proceed no further. The State received monies from the ERISA plans to which it was not entitled. The funds must be returned. The parties are to be restored to the status quo ante. That includes appropriate consideration of the loss of use of the funds for the period involved, an issue pending before this court in another appeal.

The judgment of the district court in each of the consolidated cases is AFFIRMED in all respects.

JOHN R. BROWN, Circuit Judge, concurring.

I concur fully in the Court's opinion. But in doing so, I wish to emphasize why the most potent threat to our decision—the Tax Injunction Statute, 28 U.S.C. § 1341—is non-existent.

Urged earnestly by Texas state authorities is the sweeping provision of the statute:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

On the face of things, the complaint here is that ASTA is unconstitutional because it is preempted by ERISA, the determination of which can, and ought to, be by Texas courts in the first instance. The awkwardness of this otherwise plausible contention is best illustrated by assuming we were to adopt it: because of ERISA's sweeping preemption, the Texas court having the injunction against the tax before it would have to determine whether that action was preempted. The Court's decision would raise thorny questions of review. Review would have to be through the Texas appellate hierarchy with the ultimate hope of Supreme Court review by certiorari. 28 U.S.C. § 1254 (Supp.1990). Not that the Texas appellate courts would not have the duty or power to determine the question of ERISA preemption, but the consequences of the Texas courts declaring such preemption would compel dismissal of the Texas court injunction effort.

Now all such confusing possibilities are eliminated by two recent opinions of the Texas Supreme Court,[1] especially in *Gorman*. In an exhaustive opinion by Justice Gonzalez, *Gorman* directly and in effect holds that where the controversy is preempted by ERISA, the state court lacks subject matter *jurisdiction* and that exclusive jurisdiction is in the federal courts.[2]

Except for state court cases asserting one or more of the three claims specifically identified in § 1132(a)(1)(B), ERISA pre-

---

**1.** *Pamela Chambers Gorman v. Life Insurance of North America, et al.,* —— S.W.2d —— (1991) [34 The Texas Supreme Court Journal, 457]. *James C. Cathey, et al. v. Metropolitan Life Insurance, et al.,* 805 S.W.2d 387 (Tex.1991) [34 The Texas Supreme Court Journal, 309].

**2.** *See Gorman,* —— S.W.2d at —— [34 Tex. Sup.Ct. J. at 460].

emption "would deprive state courts of subject-matter jurisdiction to hear the claim."[3] Unlike preemption as an "affirmative defense," which can be waived, preemption of the case as not within the limited scope of § 1132(a)(1)(B) "is jurisdictional in nature and cannot be waived."[4]

Since the Supreme Court of Texas, by its own deliverance, would have to hold a state court injunction suit preempted, there is nothing to be served by our initially requiring it.

Because of this consequence, we do not have to determine whether ERISA amounts, in effect, to an implied repeal of the federal Tax Injunction statute. Preemption by ERISA is self-executing to make the Tax Injunction statute of no consequence.

---

**3.** *Id.* at —— [34 Tex.Sup.Ct. J. at 460].    **4.** *Id.* at —— [34 Tex.Sup.Ct. J. at 459].